UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

**CIVIL ACTION NO. 11-243-C**

**ALBERTO GONZALEZ, M.D.,** **PLAINTIFF,**

**V.**       **MEMORANDUM OPINION AND ORDER**

**IMAGING ADVANTAGE, LLC,** **DEFENDANT.**

\* \* \* \* \* \* \* \* \* \*

In this action concerning an employment contract between Alberto Gonzalez, M.D., a radiologist who, until recently, practiced in Kentucky, and Imaging Advantage, LLC ("IA"), a California corporation that provides radiology services to hospitals throughout the country, the court will grant in part and deny in part the defendant's motion to dismiss. R. 8. Although Gonzalez has provided sufficient facts for his fraud, negligent misrepresentation, and breach-of-contract claims to go forward, he has insufficiently supported his remaining claims, which will be dismissed.

Accepting Gonzales's claims as true for the purposes of this motion, the relevant facts are as follows: In February, 2010, Gonzalez and IA began negotiating a contract for Gonzalez to work at St. Mary and Elizabeth Hospital ("SMEH") in Louisville, Kentucky. Gonzalez sought a contract with IA that included a productivity-based pay structure. In mid-February, Gonzalez met with Sam

1

Chattaloubt, Chief Operating Officer of IA, and Jason Elfenbein, an attorney for IA. At this meeting, Chattaloubt and Elfenbein made it clear that Gonzalez could make 33% more on IA's relative value unit productivity model.  IA gave him a formula to calculate his compensation under the "relative value unit" model.  Under this formula, Gonzalez projected that he could make $650,000.  IA also offered a work station at home, first rights to read as many cases as Gonzalez wanted, and the help of a Physician Assistant. Chattaloubt also told Gonzalez that he could work for other sites around the country and that IA would assist him in getting medical licenses in other states. Chattaloubt also promised that when Gonzalez joined IA, he would be Medical Director of its Kentucky operation, that he would eventually become part of its traveling team that recruited other radiologists, and that he could do interventional work at IA's other hospitals. Gonzalez then spoke with Dr. Greg Downing, a board member of IA, who confirmed what Elfenbein and Chattaloubt had told him and that he would have the ability to read many of the 900,000 cases IA was reportedly shipping out to be read.

      On March 18, 2010, Gonzalez signed a contract with IA. However, Gonzalez soon discovered that the work and compensation were not what he expected. He received only a $400,000 flat salary (plus certain extras). Further, he was not able to read the number or types of cases he expected. In addition, IA told Gonzalez that it wanted him to work at Manchester Memorial Hospital ("MMH") for ninety days, even though his contract indicates that he would be assigned to SMEH. IA

threatened him with termination if he did not agree to work at MMH.

Gonzalez also requested time off to study for his board certification exam, which was scheduled for November 7 and 8. Gonzalez's ability to be licensed in other states would be improved if he were to become board-certified. IA agreed to give Gonzalez time off in September, but conditioned this on his agreeing to a non-productivity-based pay scale of $1,800 per day with no paid time off.

In early September 2010, Elfenbein told Gonzalez that he should start looking for a new place to work after December 31, 2010. Elfenbein did not, however, give Gonzalez written notice of his termination. On November 8, 2010, and January 10, 2011, Gonzalez notified IA that it was in breach of their contract. Gonzalez continued to work for IA until his resignation on May 20, 2011.

Gonzalez raises several claims that fail at the outset.

  a. Promissory Estoppel.

Gonzalez's promissory estoppel claim fails because this claim is subsumed by his breach-of-contract claim. "[E]stoppel cannot be the basis for a claim if it represents the same performance contemplated under a written agreement." *Owensboro Mercy Health System, Inc. v. Willis North America, Inc.*, 2009 WL 1405172 (W.D. Ky., May 18, 2009). Gonzalez's allegations that IA made promises not contained within the four corners of the written contract does not alter this conclusion. Although the parties discuss the issue on these terms, the real crux in such cases is whether the induced performance (here, Gonzalez's performance) is

the same as that contemplated under the written agreement. Here, it is. The fact that IA made promises to Gonzalez that were not part of the contract is immaterial, given that the performance it was seeking is the same performance bargained for in the contract.

Gonzalez argues in the alternative that his promissory estoppel claim should survive in case the contract is "somehow deemed unenforceable." Gonzalez nowhere supports this position or provides an example of this approach being taken by a court in this circuit. Although IA failed to respond to this argument in its reply, this court nonetheless rejects Gonzalez's proposed basis for allowing his promissory estoppel claims to go forward. Nowhere does he (or IA) argue that the contract is unenforceable, nor do they explain why it might be found to be. Such speculation is insufficient to survive a motion to dismiss.

b. Implied Contract/Quasi-Contract/Quantum Meruit

Gonzalez's implied contract, quasi-contract, and quantum meruit claims fail for similar reasons as his promissory estoppel claims. "A quasi-contractual theory of recovery is inapplicable when the parties are bound by an express contract." *Cloverdale Equip. Company v. Simon Aerials, Inc.*, 869 F.2d 934, 939 (6th Cir.1989). "If the parties admit that a contract exists, but dispute its terms or effect, an action will not also lie for quantum meruit or implied contract. . . In other words, alternative pleading of an implied contract claim is only allowed in a contract setting where a party doubts the existence of a contract." *Advanced

*Plastics Corp. v. White Consol. Indus., Inc.*, 828 F.Supp. 484, 491 (E.D.Mich.1993) (*citations omitted*).

        c. Fiduciary Duty

Gonzalez's claim for breach of fiduciary duty fails outright. Basic contractual relationships (such as the contract between Gonzalez and IA) do not give rise to fiduciary duties. In an effort to avoid this conclusion, Gonzalez asserts that he and IA were engaged in a "joint venture" to secure a contract with SMEH. Joint ventures, also termed joint adventures or joint enterprises, 4A Ky. Prac. §18.3, are undertakings by two or more persons "to carry out a particular venture—a sort of 'temporary partnership'—dissolving upon the completion thereof." *Id.* The elements of a joint venture are "(1) an agreement, express or implied, among the members of the group; (2) a common purpose to be carried out by the group; (3) a community of pecuniary interest in that purpose among the members; and (4) an equal right to a voice in the direction of the enterprise, which gives an equal right of control." *Roethke v. Sanger*, 68 S.W.3d 352 (Ky. 2001). For a "joint venture" to exist, "it is necessary to the relationship that there be a sharing of the profits and losses," *id.,* a characteristic absent here. Although Gonzalez alleges that "both parties had a financial interest in the success of this joint venture," he nowhere suggests that there was a profit-sharing agreement, much less that he would be liable if their "joint venture" lost money.

Furthermore, even if a joint venture did exist, Gonzalez fails to indicate how

5

IA breached any of the fiduciary duties that arose from the venture. The "duties" Gonzalez describes are contractual duties. There was no fiduciary duty to pay him a finder's fee or medical director salary, although there might have been a contractual one. Gonzalez's attempt to re-package his contract claim in this manner fails.

### d. Wrongful Termination

Gonzalez has no viable basis for asserting wrongful termination.  In Kentucky, wrongful termination requires: "1) The discharge must be contrary to a fundamental and well-defined public policy as evidenced by existing law. 2) That policy must be evidenced by a constitutional or statutory provision." *Hill v. Kentucky Lottery Corp.*, 327 S.W.3d 412 (Ky. 2010). Gonzalez nowhere defines the public policy that his termination allegedly violated.  Because he has failed to put forward any basis whatsoever for this claim to go forward, it must be dismissed.

### e. Intentional Infliction of Emotional Distress

Gonzalez's claim for intentional infliction of emotional distress also fails. Gonzalez claims that IA "under-staffed SMEH, which led to lengthy delays," "refus[ed] to give Dr. Gonzalez his agreed-upon time off from work," and "fail[ed] to compensate Dr. Gonzalez pursuant to the ICA." None of these facts amount to intentional infliction of emotional distress on the part of IA.  An intentional infliction claim lies where there was a "plan of attempted fraud, deceit, slander, and interference with contractual rights, all carefully orchestrated in an attempt to bring

[a plaintiff] to his knees." *Kroger Co. v. Willgruber*, 920 S.W. 2d 61, 67 (Ky. 1986). The facts of *Kroger* - which include a series of lies and harassment that resulted in an attempted suicide -  stand in stark contrast to the facts alleged here, and Gonzalez's "intentional infliction" claim cannot stand.

   f. Defamation

Gonzalez alleges no facts that support his claim for defamation. His only evidence is that he was not offered a job for which he interviewed. Based on this alone, Gonzalez speculates that someone at IA made "false and disparaging comments about him," and requests that he be allowed to conduct discovery on this issue. The facts here are similar to those in *Puglise v. Regency Nursing*, LLC. 2009 WL 3079200 (W.D.Ky. Sep. 23, 2009): "Plaintiff claims only that Defendant may have made false statements to other potential employers of Plaintiff. Plaintiff offers nothing about the contents of these statements, when they may have been made or to whom they were made." *Id.* Such speculation cannot survive a motion to dismiss.

   g. Intentional Interference with Prospective Contractual Relations

Gonzalez's "intentional interference with prospective contractual relations" claim is based on similar allegations as his defamation claim, and fails for similar reasons. Although Gonzalez suggests that his failure to secure a particular job is "strong circumstantial evidence that IA committed this tort," he alleges no facts supporting this claim other than his own speculation. This is not enough to survive

7

a motion to dismiss.

      h. Retaliation

Gonzalez's retaliation claim also fails.  Gonzalez alleges simply that he "reported patient safety concerns arising out of low radiologist staffing levels to individuals at IA and/or SMEH and/or other entities pursuant to his statutory obligation to do so, and was unlawfully retaliated against in violation of KRS § 216B.165(3) for doing so."  Although he notes two emails, one to IA employee Adam Seabrook, one to SMEH employee Ken Johnson, in which he complains of the staffing levels, he offers no proof to link those complaints to retaliation.  Such conclusory pleading is insufficient to survive a motion to dismiss in light of *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

Retaliation claims require not only a showing of some protected conduct (here, Gonzalez's complaint of understaffing), and an adverse action by the defendants (here, Gonzalez's "constructive termination"),[1] but also a causative link between the two.  *See Highlands Hosp. Corp. v. Castle,* 2010 WL 2787906 at *4 (Ky. App. July 16, 2010); *Vanhook v. Britthaven of Somerset, Inc.*, 2007 WL 2142691 at *3 (Ky. App. July 27, 2007)*. See also See v. City of Elyria,* 502 F.3d 484 (6th Cir. 2007) (First Amendment retaliation claim); *Strader v. Kentucky Dept.*

---

[1]It is unclear what exactly Gonzalez's basis for his assertion that he was "constructively terminated" is. However, even accepting that he was constructively terminated, Gonzalez runs into another problem. Both emails for which he was allegedly retaliated occurred after Gonzalez claims he was constructively terminated. R. 11 at 5.

*of Fish and Wildlife Resources*, 2011 WL 181300 (E.D. Ky. Jan. 19, 2011) (same); *Leidner v. Napolitano*, 2010 WL 5300533 (E.D. Ky. Nov. 23, 2010) (Title VII retaliation claim). Gonzalez offers no evidence of causation, and thus his claim cannot proceed.

i. Wage Claim

Gonzalez's claim under KRS 337.385 also fails. Section 337.385 allows "employees" to recover wages and other compensation wrongfully withheld by their employer, as well as liquidated damages, but the statute specifically excludes "any individual employed in a … professional capacity." Ky. Rev. Stat. Ann. § 337.010(2) (2008).  Professional employees are defined as employees who perform work "requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction." 803 Ky. Admin. Reg. 1:070 §4(b)(1) (2007).  This definition encompasses medical doctors, unless they serve in an administrative capacity. See *Healthcare of Louisville v. Kiesel,* 715 S.W. 2d 246, 248 (Ky. App. 1986). *See also  Rawlings v. Breit*, 2005 WL 1415356 (Ky. App. June 17, 2005) (involving attorneys).  Other courts have followed *Rawlings* in choosing to apply the plain language of the statute and distinguishing *Kiesel* as a case that provided "no explanation for its deviation from the strictures of KRS § 337.010(2), but simply found that under the facts before it 'the context require[d] otherwise.'" *Whitewood v. Robert Bosch Tool Corp.*, 323 F. App'x 397, 403 (6th Cir. 2009) (quoting *Stathers v. Ice Cream*

9

*Distribs. of Evansville, LLC,* 2007 WL 3342498 (W.D. Ky. Nov. 8, 2007).  *See also Hodak v. Madison Capital Management, LLC*, 2007 WL 1434875 (E.D. Ky. May 14, 2007); *Roby v. Midstates Indus. Group, Inc.* 2007 WL 2025177 (W.D. Ky. July 06, 2007).

    IA argues that the statute is inapplicable to Gonzales for two reasons. First, because professionals are excluded from the class of employees who may recover under this law, and second, because Gonzalez was an independent contractor rather than an employee.  The court agrees with IA as to the first issue, so it will not need to reach the second.  The language of the statute in question is clear: "professionals" are exempt from coverage under the statute.  Gonzales is a professional and is not entitled to recover under KRS 337.385.

    The remainder of Gonzalez's claims can go forward.

      a. Breach of Contract

    Gonzalez claims that IA violated several provisions of their written contract, as well as other promises that were allegedly made by various representatives of IA. Assuming the truth of Gonzalez's claims, he has demonstrated a plausible basis for his breach-of-contract claim.

      b. Intentional Misrepresentation/Fraud/Negligent Misrepresentation

    Gonzalez's allegation of fraud contains sufficient detail to go forward, meeting the heightened requirements of specificity required by Fed. R. Civ. P. 9(b).[2]

---

[2]The parties dispute whether Gonzalez is actually raising a fraudulent inducement claim, rather than a fraudulent misrepresentation claim. In his response to

In his allegations Gonzales makes specific reference to assertions, made by specific IA agents, that Gonzales alleges were false and were known to be false.  He goes on to provide some circumstantial evidence of fraud or fraudulent intent by IA.  R. 11 at 5.  *See also Indiana State Dist. Council of Laborers v. Omnicare, Inc.*, 583 F.3d 935, 942-43 (6th Cir. 2009)(Quoting *Frank v. Dana*, 547 F.3d 564, 570 (6th Cir.2008) for discussion of the heightened standard for claims of fraud).  In meeting the heightened requirements for a claim of fraud, Gonzales has also met the less stringent standard for a claim of negligent misrepresentation.  Therefore, these claims can proceed.

   Accordingly,

   **IT IS ORDERED** that IA's motion to dismiss, R. 8, is **GRANTED** in part and **DENIED** in part.

   **IT IS FURTHER ORDERED** that the defendant shall file an answer no later than December 27, 2011.

Signed on  December 7, 2011

Jennifer B. Coffman, Judge
United States District Court

---

IA's motion to dismiss, Gonzalez indicates he is raising both.